UNITED STATES, RESPONDENT, *v.* GEORGE T. PEAY, APPELLANT.

CRIMINAL LAW—UNLAWFUL COHABITATION.—Under the Edmunds law against unlawful cohabitation, the gist of the offense is not living ostensibly with more than one wife, but the fact of such cohabitation, whether open or secret.

ID.—ID.—EVIDENCE.—Evidence of the course of life of defendant, the polygamous marriage, and continuance of the relation prior to the time mentioned in the indictment is admissible in evidence.

ID.—REMARKS OF COURT IN RULING.—The remarks of the court in ruling upon evidence and not made to or for the jury, and not objected to or no correction asked, are not ground of error, merely because certain of the remarks might tend to prejudice the jury against the defendant.

ID.—EVIDENCE.—Testimony that defendant was seen going to and coming from the house where his polygamous wives were known to live, although one and a half miles distant, but on an open prairie, is admissible, the question of "remoteness" going only to the credibility, not the competency of the testimony.

CRIMINAL LAW.—UNLAWFUL COHABITATION.—INSTRUCTION.—An instruction that the law aims at the wrongful example of an apparent as well as the actual continuance of the polygamous relation, without reference to what actually occurs with the plural or polygamous wives is not error.

ID.—ID.—EVIDENCE.—Where a woman of a family is recognized in the family by the name of the husband, it is indicative that she is something more than a stranger, and connected with the fact of marriage is admissible to go to the jury in a prosecution for unlawful cohabitation.

ID.—ID.—INSTRUCTION.—An instruction that "when you come to the proof of cohabitation with the illegal wife, it requires actual proof of the fact. The presumptions of law are in favor of innocence, and until some evidence has been given tending to show these acts of cohabitation on his part, the presumption would be that

he did not do that; but where it is shown that these acts of co-habitation have taken place with the plural wives, if shown be-yond a reasonable doubt, then it is cohabitation within the mean-ing of the law, *held*, to correctly state the law.

APPEAL from a judgment of the district court of the first district, and from an order refusing a new trial. The opinion states the facts.

*Mr. J. B. Milner,* (*Mr. W. N. Dussenberry, Mr. John E. Booth,* were with him on the brief), for the appellant.

*Mr. George S. Peters,* for the respondent.

BOREMAN, J.:

The appellant was convicted of the crime of unlawful cohabitation. He moved for a new trial, which was denied. He has appealed to this court, both from the order over-ruling the motion for a new trial and from the judgment.

1. The principal assignment of error is that "the verdict was contrary to the evidence in this: that it is conclusively shown that, upon defendant knowing of the passage of the Edmunds law, he ostensibly ceased cohabiting with any woman except his lawful wife, and no acts of his to-wards either of his plural wives afterwards, that imply cohabitation with either of them, have been proved or tes-tified to."

The first part of this assignment conveys the idea that the defendant may be guilty in fact, but that, if he be not so "ostensibly," he cannot be legally convicted. It is the same thought which has been frequently presented to the district courts, by polygamists asking how they can act to-wards their polygamous wives and not lay themselves lia-ble to conviction for unlawful cohabitation. With the same propriety might a man who steals a horse ask how he can act in regard to other men's horses and not lay himself liable to conviction for larceny. To tell him that he must simply cease stealing would not be at all satis-factory to him. To tell the polygamist that, to escape con-viction for unlawful cohabitation, he must simply cease living with his polygamous wives, is not at all satisfactory

to him.  The facts proven are not alike in any two cases
of horse-stealing; nor are the facts proven in any two cases
of unlawful cohabitation alike.  Each case shows a different
set of facts from every other case.  Counsel for appellant
is deluded with the idea that if one set of facts be proven
in one case a similar set of facts must be proven in every
other case, and that without this there can be no conviction;
and he seems to think (and this assignment is based upon
that idea) that polygamists may live in violation of the law
if they do so secretly; that the gist of the offense is to "os-
tensibly" live with them.  Any more preposterous idea
could not well be conceived.

But the latter part of the assignment is more tangible.
It asserts, in substance, that no acts of the defendant, after
he heard of the passage of the Edmunds law, were such
as to imply cohabitation by the defendant with either of
the polygamous wives.  In other words, that the facts
proven did not constitute unlawful cohabitation.  It is
the same position as that assumed by the second assign-
ment of error.

Some of the leading facts which the jury were authorized
to find from the evidence are as follows: The defendant
married his first wife 27 years ago.  He married Hannah
Paasch 25 years ago, and for 20 years Mary Sorenson has
been recognized in the families of the defendant as his
wife.  Each of these women has had a number of children
by the defendant, and all of the women and their children
bear his name, and have done so all through these years,
and up to the very day of the trial.  And all of this has
been with his knowledge and consent.  He provides homes
for all three families.‾ Two of them reside on a farm, and
in a house owned by him, a couple of miles from the town
of Provo.  The other family, that of the legal wife, lives in
a house owned by him in Provo.  He takes his meals part
of the time with the families living on the farm, and part
of the time with the family residing in town.  His children
by the first wife come from town to work on the farm, and
when they do so they take their meals with the families
living on the farm.  He himself takes general control of
the farm, and works it, and keeps his stock there.  During

the time laid in the indictment he has been accustomed to go out to the farm in the evenings from 50 to 100 times each year, returning to town generally on the following mornings. In fact, his general course and conduct towards his various families have not been in any manner different during the last two or three years from what it was prior to the passage of the Edmunds law, except that he has made a pretense of living with his legal wife since the passage of that act. But it clearly appears from the evidence that it is all a pretense, and nothing more. He did not in fact do so. A man cannot live in the promiscuous style of the defendant, with three different women, and yet expect to escape arrest and punishment merely upon a pretense or claim that he is obeying the law. He must lay aside all *indicia* of the crime. He must act in good faith, and separate himself entirely from his polygamous women. A pretense of doing that which in fact he does not do will be of no avail. His acts must correspond with his claim or pretense. Where there is an honest effort in this class of cases, as in others, to conform to the law, it is not difficult to succeed.

The witnesses for the prosecution in this class of cases are generally of the unwilling character, and mostly drawn from the households of the accused. The counsel for the defendant seems to think that the jury must accept all that such witnesses say of a character favorable to the defendant, and must discard or give less prominence to all that may be of a contrary character. It is the duty of the jury to weigh all of the evidence, and discard only such as upon their oath they cannot accept as true. They are authorized to take into consideration the relationship between the witnesses and the accused, and also their manner of testifying. When the jury find that such witnesses have been drilled to answer in line, and not to allow perjury to be a stumbling block in their efforts to save the accused from conviction, it is impossible for them to give the testimony of such witnesses in his favor as much weight as they otherwise would have done. From the inconsistencies and contradictions of such witnesses, and from the plain counter-statements of other and disinterested witnesses, the truth usually appears. Important

truths are sometimes evolved from a witness' testimony when he does not intend it. He is the unconscious instrument of proving that which he is purposing to conceal. He does not always know the bearing of the different parts of his testimony. We think that the evidence fully justified the verdict, and the verdict was not contrary to law.

2. It is assigned as error that the court below allowed evidence to go to the jury tending to show cohabitation of defendant with the plural wives prior to the passage of the Edmunds law, and prior to the time laid in the indictment, and also instructed the jury to consider such evidence. The evidence thus objected to had reference to the marriages of the defendant with these women, and the continuance of marital relations. Such evidence may not always be necessary, but in the present case it was entirely proper. It was not introduced to show acts or conduct for which the party was liable, or to show a cohabitation for which the defendant would be liable under this indictment. It was merely to illustrate and explain the evidence as to what took place during the time laid in the indictment. The instructions of the court clearly told the jury that the cohabitation necessary upon which to base a verdict was that within the time covered by the indictment.

3. It is assigned for error that the court made remarks during the trial which were unnecessary, and tended to prejudice the jury against defendant. The remarks objected to were used by the court in ruling upon the introduction of evidence. It is an almost universal rule, and one hoary with age, for courts to give their reasons for their rulings, and especially is this so where the questions are important. It would hardly be satisfactory to counsel if the court failed in this respect on points of importance, and the court would often be subjected to adverse criticism for not doing so. The giving of reasons is often an unavoidable necessity, to prevent the court from being misunderstood, and also to save time. The remarks are not made to nor for the jury, although in their presence; but that is not sufficient ground for their exclusion. If the court should inadvertently say something that might be con-

strued as injurious in case the jury should regard it, the counsel should call attention to the matter, and request the court to correct it in. the charge to the jury.

4. The refusal of the court to exclude the testimony of the witness Westfall, as to defendant's passing Westfall's house, on a public road, one and a half mile distant from the place where the plural wives were known to live, is assigned for error. It is urged that he was too far removed for his testimony to be of value. Between the house of the witness and that where the polygamous women lived the country was an open prairie. The witness says that he has seen the defendant going past his house, and along the highway, out to defendant's farm, in the evenings, and returning in the mornings, 50 to 100 times a year, within the time laid in the indictment; that he has seen him go through the gate, and into the corral; that he had seen him drive his cattle out there frequently. The "remoteness" of the witness from the dwelling where the polygamous wives lived was a question for the consideration of the jury in weighing the testimony. It does not go to its competency.

5. It is assigned as error that the court told the jury that "the law aims at the wrongful example of an apparent as well as an actual continuance of the polygamous relation, without reference to what actually occurs with his plural or polygamous wives." Whether the defendant was in fact living with these women was not necessary to be shown. The jury were authorized from the facts and circumstances proven, to conclude that such was the fact. A man cannot display all the *indicia* of a married life, and yet plead its non-existence successfully. He must put away the evidences. In trials for murder, it is not infrequent that no witness can be produced who saw the killing, but facts and circumstances may be shown which point clearly to the guilty party, and from the certainty of his guilt there is no escape. Men are often executed when the conviction is based wholly upon circumstantial evidence. These crimes against chastity and the home are of no more sacred character than those against life. Upon the same point the supreme court of the United States

has said: "It was such offense that section 3 of the act was intended to reach—the exhibition of all the *indicia* of a marriage; a household and a family twice repeated." *Cannon* v. *U. S.*, 116 U. S., 55. . The district court did not go beyond the interpretation given by the supreme court of the United States, and we see no error in that part of the charge of the district court.

6. It is assigned as error that the court below, in its charge to the jury, assumed that the name by which the plural wives may be known is a part of the offense. There is no such assumption anywhere in the charge. The court simply refers to the name borne by the polygamous women as one among the many marks of the guilt of the defendant. Where a woman is recognized in a family by the name of a man, it is indicative that she is something more than a stranger; and if connected with the other facts of his having married the woman, and continues to treat her as a wife, etc., it is proper for the jury to take it into consideration.

7. The following extract from the charge of the court is assigned as error: "But, when you come to the proof of cohabitation with the illegal wife, it requires actual proof of the fact. The presumption would be against it, to commence with. The presumptions of law are in favor of innocence, and until some evidence has been given tending to show that these acts of cohabitation on his part, the presumption would be he didn't do that; but where it is shown these acts of cohabitation have taken place with the plural wives, if shown beyond a reasonable doubt, then it is cohabitation within the meaning of the law."

It is claimed that this part of the charge "assumes that the instant that some evidence has been given tending to show his guilt the presumption of innocence vanishes and is lost." We do not think that the language used conveys any such idea. Had the latter part of the last sentence been omitted, there might have been some basis for the position of the counsel for the appellant; but the latter clause completely obliterates it. The language of the charge, taken together, conveys no idea that the presumption of innocence is changed or overthrown by any evi-

dence less than that which proves the guilt of the defendant beyond a reasonable doubt.

8. It is objected that the court erred in telling the jury that they were not bound to believe the testimony of any witness as to a state of facts testified to, but could believe or disbelieve any witness, etc. The language of the court does not convey the impression that the jury could willfully or captiously refuse to accept the testimony of a witness; but, on the contrary, that they should weigh all of the evidence, and seek the truth. There might be to the language used an intimation that probably some one had sworn falsely, and yet the instruction be entirely proper. There were statements of the witnesses that were contradictory, and some one had evidently been mistaken or sworn falsely. In either case they had to reject some of the testimony. The charge of the court simply told them that they had the right to do so. The court did not tell the jury what testimony to reject, and the language used was in no sense an invasion of the province of the jury. The only apparently obnoxious language of the court was the closing part of the sentence, namely, "or did any of the acts I have specified here as cohabitation with these women. If he has, he is guilty; if not, he is not guilty." We have frequently called attention to the fact that an isolated extract from a charge to a jury cannot be considered by itself, but that the whole charge must be taken together. The words just quoted might, if taken alone, be considered objectionable; but, when taken in connection with the other parts of the charge, their meaning is apparent. The thought conveyed, in the light of the context, is that the jury could not find the defendant guilty unless there was proof of facts which the court had said were sufficient to constitute the cohabitation. That was the fair construction of the language used, and it could not well have been understood otherwise by the jury.

9. It is further claimed that the charge, as a whole, conveyed to the minds of the jurors that the fact that at the passage of the Edmunds law the defendant was a polygamist was of the essence of the offense. It is needless to say that nothing of the kind anywhere appears in the

charge as we view it. But the very contrary is declared. They are told that they are to believe from the evidence, beyond a reasonable doubt, that the offense was committed within the time laid in the indictment.

10. The counsel for the defendant has made some points that are so attenuated as to be hardly tangible; but the following is an entirely new phase of this character of cases: The brief says: "The contention of appellant is this: That he is now incarcerated in the penitentiary, not for any act or acts he has done in violation of law, but because he has not dissolved the relation in which this law found him, and which he knows no legal way of dissolving. If the law commanded its dissolution, it would point out a mode, but it neither commands or points out a way for its dissolution. It simply says, refrain from all acts in this relation, which this defendant has done; but yet, because of these errors of law in court and jury, he exists as a convict, without even the privilege of bail, pending this appeal, solely because he has no way of severing those relations." This language is of startling simplicity. But if the defendant has been unable to find out any way to cease living with his polygamous women, it is not the fault of the law that he suffers for his imperfect knowledge. The law simply says, "Refrain from all acts in this relation;" and this the evidence plainly shows that the defendant did not do. Hence, in accordance with the law, "he exists as a convict."

We see no reason for disturbing the judgment or the order overruling the motion for a new trial. They are affirmed.

ZANE, C. J., and HENDERSON, J., concurred.